James E. Spiotto (JS-1898)
Ann Acker (AA-2574)
Franklin H. Top, III (FT-0199)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000
(Each admitted Pro Hac Vice)

Counsel to Wells Fargo Bank Northwest, N.A.
as Successor Indenture Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: Delta Air Lines, Inc., *et al.*, | ) )  ) ) | Chapter 11 |
| | ) | Case No. 05-17923 (ASH) |
| Debtors. | ) ) | (Jointly Administered) |
| | ) | |
| | ) | |
| Wells Fargo Bank Northwest, N.A., as Indenture Trustee | ) ) ) | |
| Plaintiff | ) | |
| | ) | Adv. Proc. No. _____ |
| v. | ) | |
| | ) | |
| Delta Air Lines, Inc. | ) | |
| Defendant | ) | |
| | ) | |

## ADVERSARY COMPLAINT FOR DECLARATORY AND OTHER RELIEF

Plaintiff Wells Fargo Bank Northwest, N.A., not in its individual capacity, but solely in

its capacity as Trustee on behalf of holders of those certain 9.5% Senior Notes due 2008 of Delta

Air Lines, Inc., by and through its undersigned counsel, hereby brings this adversary complaint

for declaratory and other relief against defendant Delta Air Lines, Inc. (*"Delta"*) and its affiliates

and subsidiaries that are debtors and debtors-in-possession in the above-captioned jointly administrated bankruptcy proceeding, and avers as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff acts as Trustee on behalf of the holders of the 9.5% Senior Notes due 2008 of Delta Air Lines, Inc. (the "*Senior Notes*") which are secured by a first mortgage interest in 32 aircraft.  Events of Default exist under the terms of the Indenture and the Mortgage by virtue of, *inter alia*, Delta's failure to pay interest on the Senior Notes when due on November 18, 2005. The events of default remain uncured today.  The collateral for the Senior Notes consist of 32 airframes and related collateral engines which constitute aircraft equipment.  At least five of the aircraft and related engines are eligible for protections and rights set forth in Section 1110 of the Bankruptcy Code by virtue of being first placed in service after October 22, 1994.

2.    Delta filed its petition for bankruptcy on September 14, 2005.  Delta failed to make an 1110(a) election pursuant to Section 1110(a) of the Bankruptcy Code with respect to the aircraft which are subject to the lien of the mortgage.  As a result, the Trustee believes it is entitled to exercise rights under Section 1110 of the Bankruptcy Code to repossess the aircraft in accordance with its rights under the Mortgage, and brings this action to declare its rights with respect thereto and order the Debtor to return the five eligible aircraft to the Trustee upon demand.  On numerous occasions the Debtor has challenged the Trustee's ability to repossess these five aircraft consistent with the provisions of Section 1110 of the Bankruptcy Code. Therefore an actual case or controversy exists.  The Trustee's right has become vital as a result of Delta's recent decision to further delay heavy maintenance on these aircraft for up to an additional year.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1331 and 1334.

4. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and/or (O).

5. Venue in this district is proper pursuant to 28 U.S.C. § 1409 because this is the district wherein the Defendants' chapter 11 cases are pending.

6. The bases for relief requested in this Complaint include, but are not limited to, 11 U.S.C. § 105(a), 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57 (as adopted by Fed. Banker Rule 7057) and this proceeding has been brought in accordance with Fed. R. Bankr. P. 7001(7) and (9).

7. This proceeding is not barred by the automatic stay under 11 U.S.C. § 362 because the basis for the claims set forth herein arose after the commencement of Defendants' cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*

## THE PARTIES

8. Plaintiff Wells Fargo Bank Northwest, N.A., is a national banking association with its principal place of business at 299 S. Main Street, Salt Lake City, Utah. Wells Fargo Bank Northwest, N.A., is bringing this proceeding not in its individual capacity, but solely in its capacity as Trustee.

9. Defendant Delta Air Lines, Inc. (*"Delta"*) is a corporation formed under the laws of the State of Delaware with its principal place of business at 1030 Delta Boulevard, Atlanta, Georgia, 30354. Delta, and its various subsidiaries and affiliates are debtors and debtors-in-possession under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the *"Bankruptcy Code"*) in the above-captioned jointly administered bankruptcy cases.

## I. BACKGROUND FACTS

10.     Wells Fargo Bank Northwest, N.A., serves as successor Indenture Trustee (the *"Trustee"*) under the terms of that certain Indenture dated as of November 24, 2004 by and between Delta Air Lines, Inc. and The Bank of New York Trust Company, N.A., as Trustee (the *"Indenture"*) pursuant to which Delta Air Lines, Inc. (*"Delta"*) issued its Senior Notes. A copy of the Indenture for the Senior Notes is attached hereto as *Exhibit A*. Wells Fargo succeeded The Bank of New York Trust Company as trustee under the Indenture pursuant to that certain Agreement of Resignation, Appointment and Acceptance dated as of November 2, 2005 by and between Delta Air Lines, Inc., The Bank of New York Trust Company, N.A. and Wells Fargo Bank Northwest, N.A. The Agreement of Resignation was duly filed with the Federal Aviation Administration, a copy of which is attached hereto as *Exhibit B*.

11.     The Senior Secured Notes are secured by 32 aircraft listed on the attached *Exhibit C*. The Trustee was granted a security interest in these aircraft under the terms of that certain Aircraft Mortgage and Security Agreement dated as of November 24, 2004 by and between Delta Airlines and The Bank of New York as Trustee as supplemented by that certain Aircraft Mortgage and Security Agreement Supplement No. 1(collectively, the "Mortgage"). The security interest with respect to each of the Aircraft (as defined below) was perfected by filing the Mortgage with the Federal Aviation Administration on January 5, 2005 as Conveyance No. J008356. A true and correct copy of the Mortgage is attached as *Exhibit D*. The perfection of the security interest is confirmed by lien searches conducted by competent FAA counsel, copies of which are attached hereto as *Exhibit E*.

12.     At least five of the aircraft have the benefit of Section 1110 of the Bankruptcy Code because, *inter alia*, they were first placed in service after October 22, 1994. That certain Confidential Amended and Restated Offering Memorandum dated October 14, 2004 (a copy of which is attached hereto as *Exhibit F*), pursuant to which certain holders of unsecured securities

and enhanced pass through trust certificates were offered to exchange such securities for the Senior Notes, set forth the date upon which the collateral aircraft for the Senior Notes were first placed in service. The delivery dates for the five aircraft which are the subject of this adversary proceeding seeking Declaratory Relief are set forth below:

| AIRCRAFT | MODEL TYPE | DELIVERY DATE |
|----------|-----------|---------------|
| N901DA | MD-90 | June, 1995 |
| N904DA | MD-90 | March, 1995 |
| N907DA | MD-90 | August, 1995 |
| N910DA | MD-90 | November, 1995 |
| N913DN | MD-90 | October, 1996 |

13.     Delta filed its voluntary petition under Chapter 11 of the Bankruptcy Code on September 14, 2005. Pursuant to Section 1110 of the Bankruptcy Code, with respect to all aircraft eligible under Section 1110 of the Bankruptcy Code, Delta was required, on or before November 14, 2005, to (a) make an election under Section 1110(a) of the Bankruptcy Code to cure all defaults and make current payments with respect to the Senior Notes or (b) enter into an agreement with the Trustee extending the 1110 period, or else Delta risked losing aircraft that were eligible for treatment under Section 1110 of the Bankruptcy Code. Delta failed to make the Section 1110 election and likewise failed to enter into a Section 1110(b) extension.

14.     Delta failed to pay, when due, the regularly scheduled interest payment due on November 18, 2005. The amount currently due and outstanding of principal and interest under the Senior Secured Notes as of November 18, 2005 is $246,162,500. Interest continues to accrue on these amounts as well as Trustee's fees and expenses. As a result of mandatory sinking fund payments under Section 13.04 of the Indenture due to start on or about May 18, 2006, Delta is

required to make principal payments in the amount of $36,166,666 on each of May 18, 2006, November 18, 2006, May 18, 2007, November 18, 2007, May 18, 2008, and November 18, 2008.

15. After a hearing held on February 6 and 7, 2006, this Court entered an order granting the Trustee's motion for adequate protection. The order did not waive any events of default or alter in any way the Trustee's rights under Section 1110 (see paragraph 5 thereof). The premise of the order was that Delta would continue to perform maintenance on the aircraft (or advise the Trustee otherwise). After the hearing on the motion for adequate protection, Delta advised the Trustee that based on prior maintenance history it is seeking to defer heavy maintenance on the MD-90's in its fleet (the model type of the five aircraft that are the subject of this proceeding) for an additional year. The Trustee is concerned about Delta's commitment to continue to operate MD-90 aircraft in its fleet, and does not want to have these aircraft returned with maintenance run-out for an additional year.

### A. The Applicable Documents Confirm the Eligibility of the Five Aircraft.

16. The Trustee's rights under Section 1110 of the Bankruptcy Code are confirmed by the Mortgage which provides at Section 9.15:

> Solely with respect to the MD-90 Aircraft, it is the intention of the parties thereto that the security interest created hereby, to the fullest extent available under applicable law, entitles the holders of the New Notes to the benefits of Section 1110 of the Bankruptcy Code with respect to such MD-90 Aircraft.

Mortgage, *Exhibit D*, p. 31. The applicability of Section 1110 with respect to these five aircraft was likewise one of the representations made in connection with the Exchange Offer. The Offering Statement provides:

> Of the Aircraft included in the initial collateral for the A-1 New Notes only, 5 Aircraft representing approximately 15% of the

aggregate appraised current market value of all the Aircraft included in such collateral will be eligible for the protections of Section 1110 and the remaining 27 Aircraft representing approximately 85% of such aggregate appraised current market value will not be eligible for such protections…

Offering Memorandum, *Exhibit F*, pp. 56-57.

## B. Defaults Exist Permitting the Trustee to Take Remedies.

17.  Events of Default exist under the terms of the Indenture and the Mortgage.  Pursuant to Section 5.01 of the Indenture, an Event of Default exists under the following circumstances:

(a) default in the payment of any interest or premium (if any) upon any Security when it becomes due and payable, and continuance of such default for a period of 30 days; or

\*     \*     \*

(f) the commencement by the Company of a voluntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law or of any other case or proceeding to be adjudicated a bankrupt or insolvent, or the consent by it to the entry of a decree or order for relief in respect of the Company in an involuntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law or to the commencement of any bankruptcy or insolvency case or proceeding against it, or the filing by it of a petition or answer or consent seeking reorganization or relief under any applicable Federal or State bankruptcy law, or the consent by it to the filing of such petition or to the appointment of or taking possession by a custodian, receiver, liquidator, assignee, trustee, sequestrator or other similar official of the Company or of any substantial part of its property, or the making by it of an assignment for the benefit of creditors, or the admission by it in writing of its inability to pay its debts generally as they become due; or…

Indenture, *Exhibit A*, pp. 30-31.

18.     Section 5.03 of the Indenture provides in part:

> If an Event of Default occurs and is continuing, the Trustee may in its discretion proceed to protect and enforce its rights and the rights of the Holders by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in the Aircraft Mortgage or in aid of the exercise of any power granted herein, or to enforce any other proper remedy.

19.     Upon the occurrence of an Event of Default, the Trustee is permitted to exercise remedies, including, but not limited to, the repossession of aircraft and collateral engines serving thereunder.  Section 5.01 of the Mortgage provides certain remedies available to the Trustee upon an Event of Default.

> *Section 5.01.   Remedies* (a) If an Event of Default has occurred and is continuing and so long as the same shall continue unremedied, then Trustee may, and upon the written instructions of a Majority in Interest of New Noteholders, Trustee shall, do one or more of the following to the extent permitted by, and subject to compliance with the requirements of, applicable law then in effect…
>
> (A)     cause Company, upon the demand by written notice of Trustee, at Company's expense, to deliver promptly, and Company shall deliver promptly, all or such part of the Collateral as Trustee so demands to Trustee or its order, or, if Company has failed to so deliver the Collateral after such demand, Trustee, at its option, may enter upon the premises where all or any part of any Airframe or any Engine are located and take immediate possession of and remove the same together with any engine which is not an Engine but which is installed on such the Airframe, subject to all of the rights of the owner, lessor, lienor or secured party of such engine; *provided* that an Airframe with an engine (which is not an Engine) installed thereon may be flown or returned only to a location within the continental United States, and such engine shall be held for the account of any such owner, lessor, lienor, secured party or, if such engine is owned by Company, may at the option of Company with the consent of Trustee (which will not be unreasonably withheld) or at the option of Trustee with the consent of Company (which will not be unreasonably withheld), be

exchanged with Company for an Engine in accordance with the provisions of Section 3.05(b);

(B)     sell all or any part of an Airframe and any Engine at public or private sale, whether or not Trustee at the time has possession thereof, as Trustee may determine, or otherwise dispose of, hold, use, operate, lease to others or keep idle all or any part of an Airframe or Engine as Trustee, in its sole discretion, determines, all free and clear of any rights or claims of Company, and the proceeds of such sale or disposition shall be applied as set forth in Section 4.01; or

(C)     exercise any other remedy of a secured party under the Uniform Commercial Code of the State of New York (whether or not in effect in the jurisdiction in which enforcement is sought) or by applicable law in the jurisdiction in which such Collateral shall be located.

Upon every such taking of possession of Collateral under this Section 5.01, Trustee may, from time to time, at the expense of Company, make all such expenditures for maintenance, insurance, repairs, alterations, additions and improvements to and of the Collateral as it deems reasonably necessary to cause the Collateral to be in such condition as required by the provisions of this Agreement.  In each such case, Trustee may maintain, use, operate, store, lease, control or manage the Collateral and may exercise all rights and powers of Company relating to the Collateral as Trustee reasonably deems best, including the right to enter into any and all such agreements with respect to the maintenance, use, operation, storage, leasing, control, management or disposition of the Collateral or any part thereof as Trustee may reasonably determine; and Trustee shall be entitled to collect and receive directly all tolls, rents, revenues, issues, income, products and profits of the Collateral and every part thereof.  Such tolls, rents, revenues, issues, income, products and profits shall be applied to pay the expenses of the use, operation, storage, leasing, control, management or disposition of the Collateral, and of all maintenance, repairs, replacements, alterations, additions and improvements, and to make all payments that Trustee is required or elects to make, if any, for Taxes, insurance or other proper charges assessed against or otherwise imposed upon the Collateral or any part thereof, and all other payments which Trustee is required or expressly authorized to make under any provisions of this Agreement, as well as just and reasonable compensation for the services of Trustee, and shall otherwise be applied in accordance with Article 4.

> If an Event of Default has occurred and is continuing and Trustee is entitled to exercise rights hereunder, at the request of Trustee, Company shall promptly execute and deliver to Trustee such instruments of title and other documents as Trustee reasonably deems necessary or advisable to enable Trustee or an agent or representative designated by Trustee, at such time or times and place or places as Trustee specifies, to obtain possession of all or any part of the Collateral to which Trustee at the time is entitled hereunder. If Company for any reason fails to execute and deliver such instruments and documents after such request by Trustee, Trustee may obtain a judgment conferring on Trustee the right to immediate possession and requiring Company to execute and deliver such instruments and documents to Trustee, to the entry of which judgment Company hereby specifically consents to the fullest extent it may lawfully do so.

Mortgage, *Exhibit D*, pp. 23-25. Clearly the Mortgage empowers the Trustee to take possession of Aircraft, and further, that the Trustee may repossess some, but not all, of the Collateral. In the absence of an election under Section 1110(a), Section 1110 of the Bankruptcy Code lifts the automatic stay to permit repossessions of aircraft meeting the eligibility requirements.

20. The Trustee believes it has the right to repossess the five aircraft which are the subject of this adversary complaint. The Trustee has its view that it is entitled to repossess the aircraft to the Debtors. The Debtors have repeatedly denied the Trustee's entitlement to the benefits of Section 1110 of the Bankruptcy Code. An e-mail documenting this denial is attached as *Exhibit G*. In the event the Trustee made a demand for the aircraft, the Debtors would be subject to substantial damage claims in the event it wrongfully refused to return the aircraft to the Trustee pursuant to the demand and the Trust might be subject to significant damage claims in the event it wrongfully repossesses the aircraft. The Trustee, therefore, seeks a declaration of its rights under Section 1110 prior to seeking to repossess the aircraft to avoid unnecessary damages and damage claims.

## COUNT I — REQUEST FOR DECLARATORY RELIEF
### (28 U.S.C § 2201)

21.  Plaintiff incorporates paragraphs 1 through 20 hereof by reference hereto and reallege the same as if fully set forth herein.

22.  An actual and substantial controversy exists between Defendant and Plaintiff pursuant to 28 U.S.C. § 2201 with respect to the applicability of Section 1110 to certain aircraft secured by the Mortgage.  Specifically the Trustee alleges that five aircraft which are subject of the Mortgage are subject to the rights conferred by Section 1110, and the Debtors deny the five aircraft are eligible for Section 1110 protections.  Given the magnitude of potential damage claims in the event the Debtor wrongfully refuses to return the subject aircraft or the Trustee is deemed to have wrongfully repossessed aircraft, the relative rights of the parties with respect to this issue needs to be declared.

23.  Plaintiff respectfully requests that the Court declare the legal relations of the parties and enter an order, *inter alia*.

24.  Resolution of this controversy requires a declaration by this Court of the rights, obligations and legal relations with respect to the Trustees entitlement to the rights and protections of Section 1110 of the Bankruptcy Code.

> A.  Aircraft N901DA, N904DA, N907DA, N910DA and N913DN and the relevant collateral engines, having been first placed in service after October 22, 1994, are eligible for the rights and protections of Section 1110 of the Bankruptcy Code;

> B.  Delta failed to make an election pursuant to Section 1110(a) with respect to the aircraft;

C. Events of Default exist under the terms of each of the Indenture and Mortgage enabling the Trustee to exercise remedies thereunder, including, but not limited to, demanding the return of aircraft;

D. As a result the Trustee has the immediate right to seek the immediate return of N901DA, N904DA, N907DA, N910DA and N913DN.

25. In the event the Court awards any or all of the foregoing relief, Plaintiff further requests the Court to award further necessary or proper relief pursuant to 28 U.S.C. § 2202 and/or 11 U.S.C. §105(a) including, but not limited to, an order:

A. Compelling Delta to return N901DA, N904DA, N907DA, N910DA, N913DN in compliance with any 1110(c) demand of the Trustee;

B. Ordering that such Aircraft be returned in the same manner as aircraft voluntarily returned by Delta under the terms of the Adequate Protection Order.

26. Plaintiff requests that this Court award it such other and further relief as the Court deems just and proper.

Respectfully Submitted,

WELLS FARGO BANK NORTHWEST, N.A., as Trustee

By: /s/ Ann Acker

James E. Spiotto (JS-1898)
Ann Acker (AA-2574)
Franklin H. Top, III (FT-0199)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000